UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 13-23563-CV-ALTONAGA/SIMONTON

ASSA COMPAÑIA DE SEGUROS, S.A.
As subrogee,

       Plaintiff,

v.

CODOTRANS, INC.
A Florida Corporation,

       Defendant/Third-Party Plaintiff,

v.

MURANO TRADING CORP.,
A Florida Corporation,

       Third-Party Defendant.
_____/

## THIRD-PARTY COMPLAINT

Defendant/Third-Party Plaintiff, Codotrans, Inc. ("Codotrans" or "Defendant"), by and through its undersigned counsel, Sandler, Travis & Rosenberg, P.A., sues third-party Defendant, Murano Trading Corp. ("Murano" or "Third-Party Defendant"), and alleges, on the basis of information and belief, as follows:

### JURISDICTION AND VENUE

1.    This is an action brought by Plaintiff, Assa Compañia de Seguros, S.A. as subrogee for Panafoto, S.A. ("Panafoto"), seeking damages in the principal amount of $1,076,052.00 from Defendant.

2. Plaintiff, a subrogating insurance entity, is a corporation organized under the laws of the Republic of Panama and maintains its principal place of business in the City of Panama.

3. Defendant is a corporation organized under the laws of the state of Florida and maintains its principal place of business in Miami-Dade County.

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity between the plaintiff and the defendant.

5. Codotrans files this Third-Party Complaint against Third-Party Defendant Murano Trading Corp. ("Murano") in accordance with Rule 14 of the Federal Rules of Civil Procedure. A copy of Plaintiff's underlying complaint is annexed as Exhibit 1, and a copy of Defendant's answer is annexed as Exhibit 2.

6. Codotrans is informed and believes that Murano is a subsidiary of Panafoto, a foreign corporation organized under the laws of Republic of Panama and located in Panama.

7. Codotrans asserts that Murano's actions and defalcations are principally liable for any losses asserted, sustained or realized by Plaintiff and/or its subrogor, and that such actions and defalcations are directly and proximately related to the claims asserted by Plaintiff against Codotrans in the underlying Complaint.

8. In addition, Murano is liable to indemnify Codotrans for or contribute to any judgment that Plaintiff may obtain against Codotrans.

9. Murano is a Florida corporation with its principal place of business at 8550 NW 17 Street, 110-A, Miami, Florida 33126 and is a resident of Miami-Dade County, Florida.

10. The Court has personal jurisdiction over Murano because, in connection with the allegations in this Third-Party complaint and at all relevant times, Murano transacted business and continues to transact business in the State of Florida.

11. This Court may and should exercise jurisdiction in connection with this Third-Party Complaint pursuant to 28 U.S.C. § 1367, which provides that where a District Court has original jurisdiction in an action, it has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

12. Venue is proper pursuant to 28 U.S.C. § 1391, as Codotrans' claims stem from Plaintiff's Complaint brought in the Southern District of Florida and Third-Party Defendant resides in the Southern District of Florida.

13. Codotrans asserts this Third-Party Complaint without prejudice to or waiver of any defenses that are or may be available to it.

### FACTS COMMON TO ALL ALLEGATIONS

14. Codotrans' location in Miami is a warehouse facility in which its customers receive deliveries of cargo from various vendors and suppliers. Codotrans' customers also use the facility to store, consolidate, deconsolidate, "pick and pack" and ship cargo. Murano is one of Codotrans' many customers.

15. Murano and Panafoto, S.A. (plaintiff's subrogor, "Panafoto") have a close business relationship. Murano purchases, sells, distributes and exports computers, cellular phones and similar electronic goods. As Murano acquires merchandise from its vendors and suppliers, it has the merchandise delivered to and stored at Codotrans' warehouse. Once Murano has aggregated sufficient quantities of merchandise, it arranges for the sale, shipment and exportation of the goods. Codotrans is informed and believes that Murano's shipments are exclusively, or almost exclusively, to Panafoto.

16. On or about July 13, 2012, Murano entered into a written agreement with Codotrans ("Warehouse Service Agreement" or "Agreement"). Under the Warehouse Service Agreement, and in accordance with the practice of the parties, Codotrans supplied office space to Murano, use of the fenced area within its warehouse for storage and shipment of Murano's cargo, and use of the receiving area of the warehouse. A copy of the Warehouse Service Agreement is attached hereto as Exhibit 3.

17. In addition, and as may have been requested by Murano from time to time, Codotrans personnel withdrew Murano merchandise from the warehouse storage area and loaded the merchandise withdrawn from warehouse into containers procured or arranged by Murano, for shipment.

18. All of the merchandise that Murano purchases is delivered to Codotrans' warehouse and placed in an area of the warehouse that is specifically designated for Murano's use, until such time as Murano elects to withdraw and ship its merchandise.

19. The Warehouse Service Agreement is a fairly straightforward space-for-pay arrangement. Murano staffed its rented office space with a single employee/manager, Angela de la Espriella, who was responsible to oversee and attend to Murano's business interests concerning the goods that Murano received, stored and shipped from Codotrans' warehouse.

20. Pursuant to the Warehouse Service Agreement, Murano is responsible for "warehouse coverage" and is "responsible for their [*sic*] insurance". (See Exhibit 3, Par. 6).

21. In addition, Murano was required to provide a copy of its insurance to Codotrans Exhibit 3, Par. 6),

22. Murano failed to provide a copy of its insurance to Codotrans.

Sandler, Travis & Rosenberg, P.A., The Waterford, 1000 N.W. 57th Court, Suite 600, Miami, Florida 33126 · Telephone (305) 267-9200

23. On a date or dates unknown to Codotrans, Murano determined that it had sufficient inventory in storage at the Codotrans warehouse to warrant a shipment to Panafoto, in Panama. Acting either through its freight forwarder or by contacting the ocean carrier directly, on or about January 8, 2012, Murano booked an export shipment with Seaboard Marine Ltd. ("Seaboard Marine") and made arrangements for the delivery of a 40-foot container to Codotrans' warehouse for loading and exportation.

24. As was customary for similar and previous shipments, Murano's resident manager, Ms. de la Espriella, notified Codotrans that Murano was shipping merchandise out and specified the goods to be withdrawn from Murano's designated warehouse "area" for shipment.

25. Specifically, on or about January 8 or 9, 2013, Ms. de la Espriella provided a Codotrans employee with a loading list or sheet of the warehoused goods that were to be loaded into the container for shipment ("the Shipment").

26. Thereafter, the Codotrans employee gave the loading list to Mr. Alberto Lopez, Codotrans' warehouse manager. Mr. Lopez provided the list to another Codotrans employee and instructed him to begin pulling the merchandise from the warehouse and staging it for loading it into the export container.

27. Also, on January 9, 2012, Seaboard Marine delivered an empty 40-foot container to an outside loading dock at the Codotrans' facility, backing the container to the loading bay. At delivery, Mr. Lopez checked the container to confirm that it was in good condition, and signed off on the delivery.

28. After confirming that the container was suitable, Mr. Lopez instructed another Codotrans employee to attach a pin lock to the container. A pin lock, a donut-shaped device, covers and locks the king pin at the bottom of the container. The king pin is essentially the

5

"male" portion of a container that connects to a corresponding "female" segment in the truck cab.  With the pin lock on, the container cannot connect with cab.

29.     After the pin lock was attached and locked in place, a Codotrans employee began loading the Shipment into the container.

30.     Ms. de la Espriella was on hand during the loading process, observed the specified goods being loaded into the Seaboard container, and was aware when the container was fully loaded.

31.     After the container was loaded, Ms. de la Espriella contacted Seaboard Marine to request pick-up of the container.

32.     Although it knew that the cargo in the container was valued in excess of one million dollars, Murano did not engage extra security personnel to stand watch over the container during the period following loading and prior to pick-up, nor did Murano use its own staff to stand watch during this period, nor did it request Codotrans to provide extra security.  In fact, Murano left the container and its cargo unattended.

33.     Thereafter, an unknown party unlawfully removed the container from the premises.

34.     Although the container was eventually found, its contents were never recovered.

35.     Codotrans believes and is informed that Murano filed a claim for the loss with its own insurance company, which declined payment and denied coverage.

36.     On dates unknown to Codotrans, Panafoto, as the consignee, filed a claim for the stolen merchandise, and Plaintiff, presumably having paid the loss, less a deductible, became subrogated to Panafoto's rights.

37. On or about October 3, 2013, Plaintiff sued Codotrans alleging claims for breach of contract (Count I) and negligence (Count II) arising out of the loss of the merchandise. Plaintiff alleged damages in the amount of $1,076,052.00.

38. Codotrans' responsibility for the goods covered in the Shipment ended when Murano withdrew the cargo from warehouse and, using Codotrans' personnel, loaded the Shipment into the Seaboard Marine container that Murano itself provided.

39. Codotrans denies any negligence fault or liability for the acts and damages alleged by Plaintiff.

## COUNT I – BREACH OF CONTRACT

40. Codotrans realleges and incorporates paragraphs 1-39 as though fully set forth herein.

41. Pursuant to the Warehouse Service Agreement between Murano and Codotrans, Murano was obligated to carry insurance to cover its goods.

42. Murano failed to obtain adequate, competent or appropriate insurance to cover theft of high value goods after the goods left the warehouse and were loaded into a container for transport.

43. Because of Murano's failure to obtain adequate, competent or appropriate insurance to cover its merchandise, coupled with the close business relationship between Murano and Panafoto, it is a self-evident proposition that plaintiff, Panafoto's subrogating insurer, has declined to commence action against Murano but instead targeted Codotrans as a defendant.

44. Had Murano obtained adequate, competent or appropriate insurance, Plaintiff would not have commenced the present action against Codotrans.

Sandler, Travis & Rosenberg, P.A., The Waterford, 1000 N.W. 57th Court, Suite 600, Miami, Florida 33126 · Telephone (305) 267-9200

45. Because of Murano's breach of its contractual obligations, Codotrans has incurred and continues to incur significant legal expenses in defending the present action and is faced with potential liability (which liability Codotrans expressly denies) in excess of $1,000,000.

WHEREFORE, Codotrans, Inc. demands judgment against Third-Party Defendant, Murano Trading Corp., for damages, including its attorneys' fees and the amount of any judgment obtained by Plaintiff against Codotrans, together with interest, costs and any further relief that this Court deems just and proper.

### COUNT II - COMMON LAW INDEMNIFICATION

46. Codotrans realleges and incorporates paragraphs 1-39 as though fully set forth herein.

47. Codotrans is wholly without fault concerning the damages alleged by Plaintiff.

48. At all material times, a business relationship existed between Codotrans and Murano.

49. Murano owed Codotrans a duty to use reasonable care in its handling and custody of the Shipment.

50. In failing to provide adequate security, leaving its container with high value goods unattended and in failing to obtain adequate, competent or appropriate insurance for the Shipment, Murano breached its duty.

51. Should Codotrans be found liable for the alleged loss, said liability is based solely upon the actions or defalcations of Murano.

WHEREFORE, in the event that Plaintiff is successful against Third-Party Plaintiff, Codotrans, Inc., then Codotrans, Inc. demands judgment against Third-Party Defendant, Murano

Trading Corp., for damages, including the amounts sought by Plaintiff in its Complaint, together with interest, costs and any further relief that this Court deems just and proper.

### COUNT III - CONTRIBUTION

52. Codotrans realleges and incorporates paragraphs 1-39 as though fully set forth herein.

53. The loss complained of by Plaintiff was the result of actions by Murano.

54. Should Codotrans be liable, Codotrans is entitled to contribution from Murano proportional to its degree of fault.

WHEREFORE, in the event that Plaintiff is successful against Third-Party Plaintiff, Codotrans, Inc., then Codotrans, Inc. demands judgment against Third-Party Defendant, Murano Trading Corp., for damages, including the amounts sought by Plaintiff in its Complaint, together with interest, costs and any further relief that this Court deems just and proper.

### PRAYER FOR RELIEF

WHEREFORE, the Defendant/Third-Party Plaintiff Codotrans, Inc. requests that the Court:

1. Dismiss all of Plaintiff's claims asserted in this action;

2. Award Codotrans damages in an amount to be determined at trial resulting from Murano's liability for the acts and omissions alleged herein;

3. Adjudicate Murano liable, in whole or in part, for any damages that the Court determines may be owed to Plaintiff;

4. Award Codotrans indemnification from Murano for any damages that the Court awards to Plaintiff;

Sandler, Travis & Rosenberg, P.A., The Waterford, 1000 N.W. 57th Court, Suite 600, Miami, Florida 33126 · Telephone (305) 267-9200

5. Award Codotrans proportionate contribution from Murano on any damages that the Court awards to Plaintiff; and

6. Provide any further relief to Codotrans that the Court deems just and proper.

**Dated: December 17, 2013**

Respectfully submitted,

By:   /s/ *Michelle L. Mejia*
Michelle L. Mejia (0027074)
Email:  mmejia@strtrade.com
**SANDLER, TRAVIS & ROSENBERG, P.A.**
Attorneys for Defendant
1000 NW 57th Court, Suite 600
Miami, Florida  33126
Tel.    (305) 894-1009
Fax    (305) 267-5155

Kenneth N. Wolf*
**SANDLER, TRAVIS & ROSENBERG, P.A.**
Attorneys for Defendant
551 Fifth Avenue, Suite 1100
New York, New York 10176
Tel.     (212) 590-4882
Fax     (212) 883-0068
Email: kwolf@strtrade.com
*Not admitted in Florida –
Admitted Pro Hac Vice on November 8, 2013*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on December 17, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

By: *s/ Michelle L. Mejia*
Michelle L. Mejia
Florida Bar No. 0027074

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 13-23563-CV-ALTONAGA/SIMONTON

ASSA COMPANIA DE SEGUROS, S.A.
As subrogee,

        Plaintiff,

v.

CODOTRANS, INC.
A Florida Corporation,

        Defendant.
_____/

**SERVICE LIST**

Alvaro L. Mejer, Esq.
Mejer Law, P.A.
Sun Trust Plaza/Suite 504
201 Alhambra Circle
Coral Gables, FL 33134
amejer@mejerlaw.com